Nott, J.,
dissenting:
I agree fully as to the general principles ably and elaborately discussed in the opinion of the court, and differ only as to its conclusion. The case before us, I think, is governed by the following propositions:
I. The amended Court of Claims Act (12 Stat. L., § 12, p. 765) provides “ That in order to authorise the said court to render a judgment in favor of any claimant,” it shall be set forth in the petition by the claimant, “ whether a citizen or not, that he has not in any way voluntarily aided, abetted, or given encouragement to the rebellion against the said Government, which allegations may be traversed by the Government, and if, on the trial, such issues shall be decided against the claimant, his petition shall be dismissed.”
*454 II. The Supreme Court has decided that the abandoned and captured property cases are “ subjects of jurisdiction,” to be determined according to the provisions of this general act. (Zellner's Case, 7 C. Cls. R., p. 137.)
III. The General amnesty proclamation December 25th, 1868, (15 Stat. L., p. 711,) while it relieves a citizeii from making proof of his compliance with the provisions of the statute, (Mrs. Armstrong's Case, 7 C. Cls. R., p. 289,) and even from pleading his innocence according to its requirements, (Pargoud's Case, id., p. 289,) and extends to a resident alien who owes only a temporary allegiance, (Carlisle & Henderson's Case, 8 C. Cls. R., p. 153,) cannot be extended to the case of a non-resident alien, who owes no allegiance and can be guilty of no offense. The conclusion reached by the majority of the court, that blockade-running was not an offense against the laws of the United States, seems to me a conclusive reason that the pardoning power cannot help the suitor; for the power of the President to pardon is limited to “ offenses against the United States,” and “ offense” in law is nearly synonymous with “ crime,” comprising only those acts to which the law affixes a penalty or punishment. The President may remit a fine or a penalty, but he has no power to remit the forfeiture of a bail-bond. (4 Pet., p. 144.) With the obliteration of “ offenses ” known to the law, having attached to them the attribute of punishment, the pardoning power ends. The statute which has been quoted recognizes the difference between those who owe and those who do not owe “allegiance” to the Government. As to the former class, who have violated that allegiance, the Constitution efiables the President to restore them to the condition of legal innocence. As to the latter class, who, being beyond the pains and penalties of the law, are also beyond the pardoning power of the Executive, the Constitution does not authorize the President to re-open for them the courts of the United States which have been closed by express legislative enactment.
IY. The courts of the United States being closed to the claimant, his redress, if he be entitled to any, for “acts committed” against his property during the rebellion by the Government of the United States, should have been sought under Article XII of the treaty of Washington. The purpose of the Abandoned or captured property Act,(12 Stat. L.,p. 820,) as construed b3T the Supreme Court, was to create a trust for those citizens who *455 faithfully adhered to the Government during the rebellion, and for those who, not adhering, should afterward be restored to their rights by the executive clemency. It could not have been the purpose of the statute to create a trust for the benefit of a foreigner then carrying on an illicit traffic with the armed enemies of thfe United States in violation of their blockade and against their declared public policy, nor to allow .him to come into a court of the United States, as a matter of right, and enforce the trust the moment the rebellion ended.
Y. Apart from the statutes, and apart from the aid and comfort given to the rebellion by blockade-running, it is a controlling principle that the courts of a country will not aid a foreigner to accomplish that which the laws of the country forbid to its own citizens. The title to this cotton was acquired by a nonresident alien, during the rebellion, in a blockaded port. The business was conducted through the instrumentality of blockade-runners and against the public policy of the United States. The claimant occupies the position of a smuggler. If he had acquired the fruit of his traffic, the courts of the United States would not disturb him iu his possession. Conversely, if the forbidden traffic failed to reach a result, he cannot ask the courts of the United States to aid him in acquiring this property against the declared policy of the United States.